FLAUM, Circuit Judge.
 

 Petitioner-appellant Michael Blake, now represented by counsel, appeals from the district court’s denial of his
 
 pro se
 
 section 2255 petition. Blake alleged, admittedly not in so many words, that his due process right not to be sentenced on the basis of inaccurate information was violated when the district court, in contravention of Federal Rule of Criminal Procedure 32(c)(8)(D), failed to file a written finding stating that it had not relied upon contested information in imposing his sentence. For the reasons set forth below, we affirm.
 

 I.
 

 On May 17, 1986, Blake appeared in district court and entered a plea of guilty to one count of conspiracy to distribute cocaine (21 U.S.C. § 846) and to one count of possession with intent to distribute and distribution of cocaine (21 U.S.C. § 841(a)(1)). The district court accepted the pleas and proceeded directly to sentencing. At the sentencing phase of his hearing, Blake and his attorney were asked, pursuant to Rule 32(c)(3)(D), whether they had had the opportunity to read the pre-sentence investigation (PSI) which the Probation Department had filed. Both individuals responded affirmatively. The court next inquired whether either Blake or his attorney had any objection to the factual accuracy of the report, to which counsel responded initially with some minor factual details concerning Blake’s prior residences and employment. Then, the following colloquy ensued:
 

 Mr. Lerner [defense counsel]: The only other thing, Your Honor, and I think it’s covered by Mr. Blake’s comments to Mr. Huebner [the probation officer] on page 3 in which, and pages 2 and 3, there are comments by one George Gamma, who claims to have delivered multiple kilo quantities to Mr. Blake in 1981 and 1982. Mr. Blake had indicated to Mr. Huebner that this is a gross exaggeration by Mr. Gamma. He does not deny that Mr. Gamma was his source of supply for some period of time in that period, at which time Mr. Blake would purchase approximately four ounces of cocaine from Mr. Gamma on the average of approximately three times a week.
 

 Court: ... As to the allegation of George Gamma and the counter-allegations of your client, I tried the Peters case, so I am familiar with George Gamma. I would invite comments from each counsel. I don’t think that it’s necessary for the court really to resolve that as a factual matter since there are counter-contentions of the government. Do you have anything you want to say on that?
 

 Mr. Fishbach [Assistant United States Attorney]: I have nothing to add, Your Honor.
 

 Court: Mr. Lerner?
 

 Mr. Lerner: I have nothing to add, Your Honor. I was at that trial, too, and whatever.
 

 Court: All right. Let the record show, pursuant to modified record, the court does not find that any precise finding is necessary with respect to the contentions of George Gamma or the counter-contentions of defendant; _
 

 
 *205
 
 After hearing and considering the comments of counsel, the court sentenced Blake to two concurrent eight-year terms of imprisonment followed by a three-year special parole term. Blake did not pursue a direct appeal but did file a motion for correction of sentence pursuant to Federal Rule of Criminal Procedure 35. The motion was based upon grounds other than those presented in the instant appeal and was denied by the district court in a written order dated October 21, 1985.
 

 On May 7, 1986, Blake filed a
 
 pro se
 
 petition pursuant to section 2255 asking the district court to vacate his sentence and to remand the case for resentencing as the result of violations of Rule 32(c)(3)(D). Specifically, he complained “that the court did not (1) make a factual finding as to the [PSI’s] allegations of multi-kilo quantities, or (2) make a determination or statement that the challenged information would not be taken into account at sentencing, or (3) make a written record of such finding or determination to be appended to the pre-sentence report.”
 

 In September 1986, sixteen months after Blake was sentenced, the district court denied the petition. After referring initially to the portion of the sentencing transcript excerpted above, the district court declared that:
 

 This Court felt that the Gamma allegations were a different matter. This case was separate from the Gamma case. The court intended to convey that the Gamma statements were not being relied upon for sentencing when the Court stated that it “does not find that any precise finding is necessary with respect to the contentions of George Gamma or the counter-contentions of defendant.” The Court, therefore, did not need to make a factual finding.
 

 In addition, the district court directed that its order denying Blake’s petition and, albeit belatedly, disclaiming reliance on the contested information be attached to the pre-sentence investigation “[i]n order to prevent any possibility that anyone in the future may interpret that the Court relied on those allegations at sentencing....” Blake has timely appealed the denial of his request for resentencing.
 

 II.
 

 Prior to any consideration of the merits of Blake’s section 2255 petition, we must first address the government’s contention that the violations of Rule 32 alleged by Blake are not cognizable in proceedings initiated under section 2255.
 
 [1]
 
 In support of its position, the government cites
 
 Johnson v. United States,
 
 805 F.2d 1284 (7th Cir.1986), in which we discuss at some length the truism that the grounds for relief under section 2255 are considerably more narrow than the grounds for relief on direct appeal.
 
 Id.
 
 at 1287. While recognizing a petitioner’s limited ability to allege a violation of one of the Federal Rules of Criminal Procedure in a section 2255 proceeding, we nevertheless held in
 
 Johnson
 
 that if the circumstances of violation are such that the defendant’s right to due process of law has been denied, he may be able to complain under section 2255 — not of the rule violation as such, however, but only of the violation of due process.”
 
 Id.
 
 The government asserts that because Blake’s petition nowhere invoked the magic words “due process violation,” he is merely seeking relief from a technical violation of Rule 32(c)(3)(D) and hence cannot obtain relief in a collateral attack of the procedures employed at his sentencing. We disagree. Not only are we bound by the Supreme Court’s admonition in
 
 Haines v. Kerner,
 
 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam), that
 
 pro se
 
 submissions are to be liberally construed,
 
 see also Sizemore v. Williford,
 
 829 F.2d 608, 609 (7th Cir.1987), but our reading of Blake’s
 
 pro se
 
 petition
 
 *206
 
 evidences a sufficient concern that he not be sentenced or denied parole on the basis of inaccurate information to convince us that he has, in effect, raised a due process argument.
 
 See United States v. Tucker,
 
 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) (recognizing the right of a criminal defendant to be sentenced on the basis of accurate information). Consequently, we shall proceed to address the merits of the petition.
 

 
 *196
 
 Arias was the employee who first contacted the union to initiate the organizing campaign, that employees referred to Arias as “the union man" since he was the most vocal union sup
 
 *197
 
 porter at the plant, that Arias aided the union organizer, Miguel Travieso, and was used by him to "get the news” to Tuf-FIex employees, that Arias passed out union authorization cards and campaign literature on company premises, and that at a union meeting Arias sat next to Travieso, but that Arias was never promised nor did he receive any monetary or other benefit from the union.
 

 
 *206
 
 Although Blake has succeeded in surmounting the jurisdictional obstacle to the relief he seeks (resentencing), the burden remains with him to demonstrate that his original sentencing resulted in a violation of his right to due process, his right to be sentenced on the basis of accurate information.
 
 Tucker; see also United States v. Rone,
 
 743 F.2d 1169, 1171 (7th Cir.1984). Were Blake appealing directly from his conviction he would, in most instances, be entitled to a remand for resentencing merely by demonstrating a technical violation of Rule 32(c)(3)(D).
 
 United States v. Sosa,
 
 789 F.2d 1257 (7th Cir.1986);
 
 United States v. Eschweiler,
 
 782 F.2d 1385 (7th Cir.1986). As we have already noted, however, Blake is proceeding not on direct appeal but pursuant to section 2255. This fact is critical, not simply because Blake is limited to raising only a due process claim but, and more importantly, because the test for demonstrating a due process violation in these circumstances is far more demanding than the showing required to demonstrate a technical violation of Rule 32. In this vein, we have held:
 

 [I]n order to show a due process violation, the defendant must raise a grave doubt as to the veracity of the [contested] information
 
 and
 
 show that the court relied on the false information in determining the sentence.
 

 (Emphasis supplied).
 
 Eschweiler,
 
 782 F.2d at 1387;
 
 Rone,
 
 743 F.2d at 1171. Blake cannot meet the second prong of this two-pronged test and cannot, therefore, sustain his due process claim.
 

 The gravamen of Blake’s allegations is that the presentence investigation inaccurately characterized as “multi-kilo” certain prior and unrelated narcotics transactions he and another individual, George Gamma, were supposed to have consummated. While admitting to an association with Gamma of unspecified duration, during which time Blake purchased from Gamma approximately four ounces of cocaine roughly three times per week, Blake disputes the allegation that the relationship ever reached the multiple kilo level. The government responds by asserting that simple arithmetic demonstrates that one need only assume an association between Blake and Gamma of six weeks duration before their admitted dealings would rise to the multi-kilo level.
 
 [2]
 
 Such facile calculations, however, do not adequately address what we perceive to be the primary ambiguity in the pre-sentence report’s reference to the Gamma allegations—whether Gamma was referring to several discrete multi-kilo transactions or simply to transactions which in the aggregate amounted to more than a kilo in weight. Accordingly, and in the absence of any attempt by the district court to clarify the pre-sentence investigation’s references to this matter, we are prepared to concede that Blake has raised sufficient doubt as to the accuracy of Gamma’s allegations.
 

 In contrast, it is the second prong of the
 
 Eschweiler
 
 test where Blake’s due process claim founders and ultimately fails, due to his inability to demonstrate satisfactorily that the sentencing judge relied on the contested information in determining Blake’s sentence. Putting to one side the fact that the district court judge explicitly disclaimed any reliance on the Gamma allegations when he denied the instant petition, the judge’s remarks at Blake's sentencing satisfy us that the extent of Blake’s association with Gamma, in transactions wholly unrelated to the charges with which he stood charged, played no part in the sen
 
 *207
 
 tence imposed. A careful review of the sentencing transcript indicates that the district court judge’s primary motivation for sentencing Blake as he did was the fact that while released on bond in connection with the charges at issue here, Blake was re-arrested and found to be in possession of a considerable quantity of drugs. In the words of Judge Warren:
 

 I guess the most important question I haven’t really found an answer to in this whole situation, Mr. Blake, is that you get indicted in January, you appear and enter a plea of not guilty to this indictment, you are released on bond of $10,-000.00 O.R. Bond, and then this spring you are arrested in this Continental full of drugs. The car had 42.6 grams of cocaine, 122 grams of marijuana, 17 tablets of Yalium, 6 tablets of Limbitrol, whatever that is, five tablets of Lozal and 8 tablets of Perkodan.
 

 Do you have a statement that explains to me how a guy who has been tagged on a five-count indictment, who is looking at serving time, goes and does what you did....
 

 (Sentencing transcript at 41). The other factors weighing most apparently on Judge Warren’s mind as he imposed sentence were the undisputed fact of Blake’s persistent involvement in drug trafficking; the fact that Blake was not only a user of drugs but a dealer as well; and the apparently uncontested fact that Blake had in the past been armed while conducting his illicit trade in narcotics. We are satisfied that these factors and not the tangential allegations of George Gamma provided the foundation for Blake’s concurrent eight-year sentences.
 
 [3]
 

 III.
 

 Before concluding, we pause to underscore that the procedures mandated by Rule 32(c)(3)(D) are not discretionary but are, in fact,
 
 mandatory.
 
 Faithful adherence to these straightforward procedural requirements will spare all levels of the judiciary the time and effort of revisiting criminal sentences, the finality of which should be settled at the time they are imposed, not in repetitive collateral proceedings years after the fact. The district court’s denial of the petition is
 

 Affirmed.
 
 [4]
 

 [1]
 

 . We note that because Blake’s petition was filed prior to our decision in
 
 Williams
 
 v.
 
 United States,
 
 805 F.2d 1301 (7th Cir.1986) (federal prisoners required to demonstrate cause for and actual prejudice resulting from failure to raise constitutional issues at trial, on direct appeal or in Rule 35 motion) and because the government failed to raise
 
 Williams
 
 in the district court prior to the court’s denial of the petition, we are not required to find the petition procedurally barred.
 

 [2]
 

 . We take judicial notice of the fact that a kilogram of cocaine weighs approximately 2.2 pounds. The government points out that by multiplying petitioner's admitted weekly purchases from Gamma (4 ounces three times per week = 12 ounces) by six weeks, petitioner would have dealt in roughly 72 ounces
 
 (4.8 lbs)
 
 or in excess of 2 kilos of cocaine.
 

 [3]
 

 . We remain aware, as we were in
 
 Johnson,
 
 that:
 

 ... [I]t is possible that the judge’s memory was playing tricks on him, that in fact when he sentenced [the defendant] he was under the influence of information in the presen-tence report that he didn’t bother to mention, and he forgot about his unrecorded mental processes.
 

 805 F.2d at 1289. However, where this possibility exists as only a possibility, and the defendant can point to no evidence that reliance on the contested information was
 
 probable,
 
 we have held that no violation of due process occurred.
 
 Id.
 
 We stress that our acceptance of such
 
 ex post facto
 
 determinations of nonreliance is at best reluctant — justified in this case
 
 only
 
 by our firm belief that the sentencing transcript accurately reflects Judge Warren's reasons for imposing the sentence he did.
 

 [4]
 

 . The other relief sought by Blake, that prison and parole officials be apprised that the district court did not consider the Gamma allegations, was eventually afforded when Judge Warren ordered that his explicit statement of nonreliance, contained in his order denying Blake’s section 2255 petition, be appended to the pre-sentence report on file with prison and parole board personnel.